IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA MOFFITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-CV-2189-KOB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

I. INTRODUCTION

On January 25, 2007, Sheila Moffitt filed for benefits under Title II and Title XVI of the Social Security Act alleging disability beginning January 31, 2005, which was amended to January 1, 2006. Claimant alleged disability resulting from pain in her lower back, legs and feet, possibly related to contracting polio when she was 2 ½ years old. (R. 139).  The Social Security Administration denied claimant's application on March 20, 2007. (R 47).  Claimant then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 12, 2009.  (R. 19-44).  In an opinion dated April 24, 2009, the ALJ denied claimant's application, finding that, though the claimant had the severe impairment of degenerative disk disease and degenerative arthritis of the hip, she was capable of performing jobs that exist in substantial numbers in the national economy. (R. 10-18). The Appeals Council denied her request for review on August 27, 2009. (R. 1-3).  Claimant timely filed an appeal to this court, which affirms the

1

ruling of the ALJ.

## I. ISSUES PRESENTED

The only issue presented to this court for review is whether the ALJ failed properly to apply the Eleventh Circuit's pain standard by neglecting to articulate reasons supported by substantial evidence for finding that the claimant's testimony lacked credibility.

## III. STANDARD OF REVIEW

The standard of review is limited to determining whether the Commissioner applied the correct legal standards and whether substantial evidence supports the Commissioner's factual conclusions. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In reviewing whether the ALJ applied the appropriate legal standards, "[n]o...presumption of validity attaches to the [Commissioner's] legal conclusions." *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987). However, this court does not review the Commissioner's factual determinations *de novo*, and therefore may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Even if the court finds that the evidence "preponderates" against the Commissioner's decision, the court must affirm the ruling *if it* is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether substantial evidence exists, the court must "scrutinize the record in its

entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  Thus, a reviewing court not only must look to those parts of the record that support the opinion of the ALJ, but also must take into account evidence that detracts from the ALJ's opinion.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

To establish disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three part test.  First, the claimant must show evidence of an underlying medical condition, and second, present either objective medical evidence confirming the severity of the alleged pain or proof that the objectively determined medical condition can reasonably be

3

expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  In applying the pain standard, if the commissioner decides not to credit the subjective testimony of the claimant, he must discredit it explicitly, articulating adequate reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## V. FACTS

At the time of the ALJ's decision, the claimant was forty-eight years old. (R. 111).  She has a high school education and past relevant work experience as a certified nurse assistant and a waitress. (R. 143, 155). Claimant alleges that she has been unable to work since January 1, 2006 because of pain arising from degenerative disk disease and degenerative arthritis of the hip. She has not engaged in substantial gainful activity since the alleged onset date.

*Physical Limitations*

At the request of the Commissioner, claimant visited Dr. Vakharia, an internist, on March 14, 2007.  (R. 177).  She complained to him of ongoing lower back pain ranging from moderate to severe.  She also complained of pain, numbness and tingling in her right leg. (R. 177).  She claimed that she could not walk more than 10 feet, stand up for more than 20 minutes, or sit more than 30 minutes, without exacerbating her back pain.  She also claimed that she could not lift more than 10 pounds.  Dr. Vakharia's physical examination revealed the following:

> Patient does have tenderness on the lumbar and sacral spine. Minimal spasm of paraspinal muscle.  Straight leg raising about 20 degree on the right side, 35 on the left side, patient was complaining of low back pain.  Crepitation both the knee joint [sic]. Movement of hip limited due to significant low back pain.  Patient's gait was normal.  She can walk on the tip toes as well as on the heel for a few steps.  Forward flexion of the spine about 60 degree, complaining of low back pain.  Patient can squat up to 110 degree, but complaining of low back pain.  No gross sensory motor loss in the limb. (R. 178).

In addition, an X-ray of the lumbrosacral spine revealed mild lordosis (inward curvature of the spine) with possible transitional vertebrae.  The x-ray also showed degenerative arthritis of the left hip joint but no acute fracture or subluxation. (R. 178). The charts completed by Dr. Vakharia reveal somewhat diminished flexion of the spine and range of motion in her hips. Dr. Vakharia's diagnoses were low back pain with radiculopathy (a problem in which nerves may be inflamed, pinched, or affected by a lack of blood flow, possibly resulting in pain, weakness, numbness, or loss of muscle control) and a history of polio in the right leg.

On August 10, 2007, the claimant visited Quality of Life Health Services, Inc., complaining of a bruise on her leg and ankle.  The medical record does not indicate by whom she was treated. She also complained of low back pain and wanted to be checked out for diabetes.  She listed her pain as 5-6, presumably on a 10-point scale.

Claimant returned to Quality of Life on October 12, 2007, complaining of back pain and trouble sleeping.  She listed her pain scale as an 8.  The record from that visit reported her earlier diagnosis of degenerative joint disease.  An MRI ordered that day and taken on October 15 revealed mild disk desiccation and mild annular bulge at L4-5 but no herniation or stenosis.  At L5-S1, the MRI revealed disk desiccation with annular bulge and  moderately severe right facet joint hypertrophic degenerative change with a facet joint effusion; these produced moderate foraminal stenosis (narrowing of the spine that can cause pain and muscle weakness) with flattening of the intraforaminal right L5 nerve root.  The interpreting doctor's final impression was foraminal stenosis at L5-S1 on the right.

Finally, in August 2008, a nurse practitioner at Cullman Quality Health Care gave claimant a diagnosis of disabled as a result of spinal stenosis for the purpose of receiving food

stamps. (R. 199). The claimant's only other medical records concern vision problems that are not bases for her disability application and hence not relevant here.

## *The ALJ Hearing*

After the Commissioner initially denied the claimant's request for Social Security disability benefits, the claimant requested and received a hearing before an ALJ. (R. 20). At the hearing, the claimant was represented by counsel. The counsel argued that the claimant should be found disabled under listing 1.04A for disorders of the spine. Alternatively, the attorney argued that the claimant would be "unable to maintain adequate work attendance at any exertional level due to chronic, moderately severe back pain." (R. 26).

Responding to the attorney's question, the claimant asserted that pain in her back and legs would prevent her from doing any type of work. (R. 26). The claimant also maintained that she could barely get out of bed in the morning and had to lie down most of the day, for at least four hours. She said that she took six to eight Tylenol a day for the pain. She stated that she had not received treatment for her back because she could not afford it. On a scale of zero to 10, the claimant said her pain was around a seven or eight everyday, and never got lower than a 5. (R. 27). The claimant asserted that the pain affected her ability to sleep, to concentrate, and to complete housework. She also maintained that her back pain would prevent her from working a sit-down job for eight hours a day because she could only sit or stand for 30 minutes without aggravated pain and could only lift eight to 10 pounds. (R. 29). According to the claimant, she could only walk to her front door and maybe out into the yard before her back started to hurt severely. Finally, the claimant told the attorney that she was unable to drive and had not seen a doctor for two years.

Next, responding to the ALJ's questions, the claimant testified that she has a daughter, 19, who draws disability, and a son, 25, who lives nearby. To reduce the pain, she takes Tylenol and lies down when possible. The claimant testified that her ex-husband had pushed her on a rock, but that her back had hurt before that. Also, she said that it sometimes felt like her hips would give out, causing her to fall. She stated that she had fallen a few times over the course of a year, but that the last time had been about two years ago. The claimant next testified that she had left her last job as a Certified Nursing Assistant, though she enjoyed it, because her back hurt too much. On the weekends, claimant testified, she just lies around the house. The claimant also asserted that she could not pick up her granddaughter because of her back, and that she was not receiving any medical treatment because of her financial situation. The claimant also recalled that a nurse practitioner had recommended surgery for her back, but that she could not afford it.

Next, the ALJ questioned the Vocational Expert (VE), James Hare. The VE testified that the claimant's work as a CNA was at a medium exertional level and was semi-skilled. (R. 40) Her past work as a waitress was light and semi-skilled. The VE testified that, according to the residual functional capacity form filled out by a state agency, the claimant would be able to perform her past work as a waitress. The ALJ then asked the VE a hypothetical that incorporated some of the claimant's limitations:

> If we had an individual with the residual functional capacity to lift and carry 50 pounds occasionally and less than 10 pounds frequently, stand and walk six of eight hours, sit for six of eight hours with a sit/stand option. That is an ability to stand up and/or sit down to relieve pain. Would be limited in the use of the lower extremities.... Would such an individual be able to perform any of the claimant's past relevant work?
>
> The VE testified that an individual with the limitations described would not be able to

perform any of the claimant's past relevant work, but would be able to perform other types of work that exist in the national and state economies. For instance, the VE testified that a person with those limitations could perform jobs such as an information clerk, cafeteria cashier or ticket taker. Next, when the ALJ added to the hypothetical the condition that the individual experienced moderately severe back pain, the VE testified that this level of pain would interfere with the ability to concentrate to such an extent as to prevent all work. When the ALJ amended the hypothetical so that the individual experienced the same functional limitations but only mild and intermittent pain, the VE testified that the person would be able to do the same jobs of ticket taker, cashier, or information clerk. Lastly, the claimant's attorney asked a hypothetical about whether a person could work who, because of back pain, had to recline for four hours out of an eight hour workday. The VE testified that this requirement would prevent all gainful employment.

*The ALJ's Decision*

On April 24, 2009, the ALJ issued an opinion denying disability insurance for the claimant. Though the ALJ found that the claimant suffered from severe impairments of mild degenerative disk disease with foraminal stenosis L5-S1 on the right and degenerative arthritis of the left hip, he also found that she had a residual functional capacity to perform work that exists in significant numbers in the national economy.

In making his finding, the ALJ reviewed the claimant's medical record in full. First, he recorded her examination by Dr. Vakharia in great detail, including the doctor's notations about her height, weight, back tenderness, straight leg raising, knee joints, range of hip motion, gait, spine flexion, sensory motor function, and X-ray readings. (R. 13). In addition, the ALJ recorded

information about the claimant's visit to Quality of Life Health Services, Inc., most importantly reports of degenerative joint disease, back pain, and MRI readings.  Finally, though not directly relevant to her disability claim, the ALJ noted both of claimant's visits to doctors regarding her vision.

After reviewing claimant's entire available medical history in his decision, the ALJ determined that claimant had a residual functional capacity that would allow her to perform sedentary work with some limitations:

> ...to lift and carry 50 pounds occasionally and less than 10 pounds frequently, stand and walk six of eight hours, sit for six of eight hours with a sit/stand option.  That is an ability to stand up and/or sit down to relieve pain.  Would be limited in the use of the lower extremities.(R. 14).

The ALJ stated that he considered all the symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence.

The ALJ then applied the pain standard, but found that the claimant's assertions about the intensity, persistence, or functionally limiting effects of her pain were not credible to the extent that they were inconsistent with his residual functional capacity assessment.  (R. 15).  The ALJ thoroughly recorded the claimant's allegations about her limited ability to function.  He found them not credible, however, for a number of reasons.  (R. 16).  First, he noted that, though claimant alleged disabling pain since January 2006, no records in the file reflect reports of pain to a treatment center until August 2007.  The ALJ stated that even someone who was unable to afford medical treatment would likely have visited an emergency room in an attempt to deal with daily pain at the level claimed.  He next noted that Dr. Vakharia did not find anything abnormal that would produce the pain and limitations alleged by the claimant.  He next observed that

though the MRI of the lumbar spine revealed moderate foraminal stenosis at L5-S1 and flattening of the intraforaminal right L5 nerve root, insufficient damage to the nerve existed to cause weakness and impair ambulation. The ALJ considered the fact that, though the claimant stated that she sometimes felt that she would fall, she did not use any ambulatory assistive device and had not fallen for over two years.

The ALJ discounted the claimant's testimony that a nurse practitioner recommended surgery because the record contained no report of any examination and a nurse practitioner is not a specialist or surgeon with expertise to make such a determination. He asserted that the claimant's alleged limited daily activities could not be verified with any degree of certainty, and even if true, were not attributable, to the degree alleged, to anything evidenced in the medical files. He therefore concluded that "although the evidence established an underlying medical condition capable of producing some pain and limitation, the substantial evidence does not confirm disabling pain or other limitations arising from the claimant's alleged impairments and the claimant's alleged inability to perform all substantial gainful activates [sic] is simply not corroborated by substantial evidence." (R. 16). Finally, he accorded no weight to the opinion evidence of the state disability examiner and little weight to that of a nurse practitioner to the effect that the claimant was permanently disabled. (R. 16). Neither was a medical doctor or specialist qualified to make a determination about disability, and because those assessments are not determinative of the issue of disability under the Social Security Act. 20 CFR 404.1527(e)(1).

In conclusion, the ALJ found that the claimant's age, education, work experience, and residual functional capacity would allow her to perform jobs that exist in significant numbers in the national economy. (R. 17). He based this determination on the opinion of the VE that,

according to her residual functional capacity as determined by the ALJ, she could perform work such as an information clerk, cafeteria cashier, or ticket taker.  Consequently, the ALJ found that the claimant has not been under a disability, as defined by the Social Security Act, from January 1, 2006 through the date of the decision, April 24, 2009. (R. 17).

## VI. DISCUSSION

The issue presented for review by the claimant is whether the ALJ failed properly to apply the Eleventh Circuit's pain standard by neglecting to articulate reasons supported by substantial evidence for finding that the claimant's testimony lacked credibility

To establish disability based on testimony of pain and other symptoms, the claimant must show: (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence confirming the severity of the alleged pain or (b) evidence that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  When the Commissioner decides not to credit subjective pain testimony, he must discredit it explicitly and articulate adequate reasons for doing so.  Failure to articulate adequate reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  Implicit in the rule that the Commissioner articulate reasons for discrediting subjective pain testimony is the requirement that these reasons be supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  But, under the limited standard of review, this court does not make credibility determinations. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997).

In making his determination that the claimant was not disabled under the meaning of the

Social Security Act, the ALJ articulated adequate reasons supported by substantial evidence for discrediting the claimant's subjective testimony.  The ALJ clearly listed a number of reasons for finding that the claimant's allegations of pain were not wholly credible.  As noted above, the ALJ observed that the record indicated no reports of pain to medical providers for more than a year after the alleged onset of disabling pain.  The ALJ observed, further, that the claimant had not sought any medical treatment, even from an emergency room, for her alleged pain.  The brief for the claimant cites Social Security Ruling 96-7p to support the contention that the ALJ improperly discredited the claimant's subjective pain testimony on the basis of a lack of medical treatment:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the record, that may explain infrequent or irregular medical visits or failures to seek medical treatment....For example: The individual may be unable to afford treatment and may not have access to free or low-cost medical services. S.S.R. 96-7p.

This court notes that the Ruling states that the ALJ must not draw inferences on the basis of a lack of medical care "*without considering any explanations*" such as impecunity, that the individual may provide. Yet in his opinion, the ALJ explicitly considered the claimant's assertion that she could not afford medical treatment, writing: "Even though the claimant stated that she was unable to afford medical treatment and therefore, did not seek treatment, it is unlikely that the claimant would have daily pain on the level alleged and not at least seek treatment" at an emergency room. (R. 16).  Thus, though the ALJ ultimately does not accept the claimant's explanations as true, he quite clearly considers them.  Further, the claimant's explanation that she was unable to acquire medical care because of lack of resources, even if true, is not dispositive.

Both assessing the truth of the claimant's assertion and determining what weight to give it fall within the ALJ's discretion. The ALJ did not abuse that discretion in considering the fact that claimant had never attempted to attain emergency room services despite allegedly totally disabling pain as evidence that she lacked credibility.

The ALJ also listed other reasons for finding that the claimant's subjective pain testimony lacked credibility. For instance, he noted that, though an MRI of the lumbar spine in October 2007 "revealed moderate foraminal stenosis at L5-S1 on the right with flattening of the intraforaminal L5 nerve root[, it] has not caused weakness sufficient to impair ambulation." (R. 16). He noted, further, that the claimant did not use any device to assist ambulation, and had reported no incidents of falling in the past two years.

The brief for the claimant states that objective medical evidence "confirms that the Plaintiff suffers from degenerative disc disease, foraminal stenosis and flattening of the L5 nerve root," and contends that "[t]he ALJ's statement shows a complete lack of understanding of the effect of those impairments on one's ability to function." (Pl's. Brief 8). However, the ALJ explicitly addresses those objectively determined medical conditions, and concedes that they meet the first part of the pain standard, that they establish "an underlying medical condition capable of producing some pain and limitation." (R. 16). Having found possibly disabling conditions, in applying the second part of the pain standard the ALJ must decide whether objective medical evidence confirms the severity of the alleged pain or, alternately, whether the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225. Therefore, the claimant's bare assertion that the ALJ "shows a lack of understanding of the effect of those impairments on one's ability to function" seems to

beg the question, assuming as a premise what she must prove: namely, that the claimant's conditions truly were disabling. But again, the determination of whether the claimant has proved her allegations of disabling pain rests, as a matter of fact and including evaluations of the claimant's subjective credibility, within the discretion of the ALJ so long as his decision is supported by substantial evidence.

Finally, claimant's brief takes issue with the ALJ's summary of Dr. Vakharia's examination to the effect that the doctor "found nothing abnormal that would produce the pain and limitations alleged by the claimant." (Pl's. Brief 8). In support of the argument that this misrepresents the doctor's assessment, claimant observes that during Dr. Vakharia's examination, the claimant repeatedly complained of low back pain, sometimes significant, that affected range of her hip and spine motion. (R. 178). Also, claimant notes that Dr. Vakharia's exam revealed "tenderness in the lumbar and sacral spine." (R. 178). But, the ALJ recounted all of these observations in the earlier portion of his opinion when making his initial determination that claimant suffers from severe medical conditions. The sentence cited by the claimant that the doctor "found nothing abnormal that would produce the pain and limitations alleged by the claimant" is found in the portion of the ALJ's opinion dealing with subjective complaints of pain. Again, the ALJ was within his discretion to determine that the claimant's subjective complaints of pain to the consultative examining physician were not credible to the extent that they are completely disabling.

This court does not make determinations about the credibility of a claimant's subjective pain testimony, see *Lewis*, 125 F.3d at 1439-40, but only reviews the ALJ's decision to decide whether he has articulated adequate reasons for his finding of no credibility, see *Brown*, 921 F.2d

at 1236, and whether these reasons are supported by substantial evidence. See *Hale*, 831 F.2d at 1012. The claimant's arguments resolve into the contention that the ALJ should have found the claimant's subjective complaints credible. This court finds, however, that the ALJ provided adequate reasons supported by substantial evidence for rejecting claimant's subjective pain testimony.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

The court will enter a separate order in accordance with this Memorandum Opinion.

DONE and ORDERED this 15th day of December 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE